[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter was commenced by a complaint dated September 30, CT Page 11153 1991, with a return day of October 22, 1991. The defendant filed an answer and counterclaim, dated December 23, 1991. Then on January 27, 1992, the plaintiff filed an answer to the defendant's counterclaim.
The plaintiff, Renee I. Carey, and the defendant, George Dimopoulous, met at a dance in February 1990. They started dating in March 1990, and became pre-engaged on March 29, 1990, and engaged on April 29, 1990. Then in June 1990, the defendant moved from Bridgeport, Connecticut, to Wolcott, Connecticut, to live with the plaintiff in her home. The parties lived together until October 1990, when their relationship ended for the first time. During the period of April 24, 1990 to September 10, 1990, the plaintiff claims she loaned the defendant the sum of $19,472.30, as set forth in Exhibit E. Of that sum, the plaintiff testified that the defendant paid her back $1,300.00, leaving a balance now due to her of $18,172.30.
The defendant claims that the plaintiff loaned him no monies and, in fact, he has counterclaim for $25,000.00 plus interest. His counterclaim is for twenty-five (25%) percent interest in the plaintiff's former home at 81 Forestview Drive, Wolcott, Connecticut, which he claims the plaintiff promised him in return for cosigning a home equity loan on said home for $98,600.00. This home equity line was obtained by the plaintiff from Centerbank on June 22, 1990. The defendant also counterclaims for $10,000.00 in paychecks he claims he gave to the plaintiff, $3,000.00 for work he performed on the plaintiff's aforesaid home and $3,000.00 to $4,000.00 value in the 1988 Isuzu automobile he claims he gave her.
When the parties began living together, the plaintiff testified that on eight or ten occasions, the defendant would give her his paycheck, and she would cash them, then and there, and give the cash to the defendant (she claimed she always had $3,000.00 to $4,000 cash hidden in her home). She then deposited the defendant's paychecks in her checking account at the Bank of Boston. The parties later had a joint account together. The defendant claims that all of the checks in Exhibit 6, which represents the paychecks he gave to the plaintiff were retained by her and kept in her bank account and used to pay bills of the defendant and plaintiff. He also testified that the plaintiff gave him $75.00 per week for gas money and lunch money from these checks. Other than that, he denies receiving any other money from said checks. The checks in Exhibit 6 total $5,672.15. CT Page 11154
When the parties met, the plaintiff had two mortgages on her home, totalling approximately $33,000.00. In June 1990, the plaintiff obtained the home equity line of credit for $98,600.00, secured by a mortgage on her home and with the defendant as co-signer. Both parties agreed one of the purposes of said line of credit was to obtain monies to finish a room in the plaintiff's home, which was constructed in approximately 1981 and remained in an unfinished state since then. The plaintiff also said another purpose of the line of credit was to purchase a truck for the defendant so that he could go into the siding business. The defendant testified that one of the purposes of said line of credit was to provide monies so the parties could go into the aluminum siding business together. In any event, the home equity line was not used to start an aluminum siding business, but it was used to purchase a 1989 GMC truck for $14,567.10. of this sum, $11,392.10 was cash and $3,175.00 as a credited trade-in value for a 1985 automobile owned by the plaintiff. The check which the plaintiff used to purchase this truck stated on it that this was a "loan for George's truck" (Exhibit B). The defendant retains the truck to this date, and refuses to pay the plaintiff for the same even though demand has been made on him by her for the same. The defendant claims he gave title to his 1988 Isuzu automobile to the plaintiff and he received the truck in return. However, the plaintiff paid off a lien on said Isuzu of $8,767.30 with her own monies when she got title to said vehicle (Exhibit D).
After the parties' relationship ended in October 1990, the defendant moved out of the plaintiff's home. The parties then got back together again in late 1990 and were once again engaged. They were to be married in 1991. However, they again terminated their relationship in February 1991. The plaintiff testified that due to the influence of one of her sons, she insisted on a Pre-Nuptial Agreement prior to her marriage to the defendant. She stated that each time her engagement to the defendant was called off, it was due mainly to a disagreement the defendant had with such a Pre-Nuptial Agreement.
The plaintiff sold her home on 81 Forestview Drive, Wolcott, Connecticut, on August 27, 1992, for $160,000.00. She alleges she could no longer afford to keep said home because of the loans she made to the defendant and which he refused to pay back. The defendant married his present wife on October 27, 1991, and now lives with her in the State of Massachusetts. He is presently unemployed. CT Page 11155
The defendant claims that his 1988 Isuzu automobile had a value of $13,000.00 in 1990 when he transferred title to the plaintiff.
One of the plaintiff's sons and her friend, Madalene Asipo both testified that the defendant acknowledged to them that the money advances the plaintiff made to the defendant were loans which he intended to pay back to her.
There was a burglary at the plaintiff's home on August 21, 1990, in which $3,460.00 cash, jewelry and other items worth several thousand dollars were taken. The defendant testified that he found a portable telephone in the home which was allegedly stolen in said burglary. He stated that when he asked the plaintiff about this, she broke down crying and admitted the robbery never took place and was staged by her. However, her insurance company paid an insurance claim of $20,577.31 to the plaintiff relative to said robbery. Lieutenant Joseph Fort of the Wolcott Police Department testified that an individual was arrested for this robbery by his department. He also stated that an informant pointed out the plaintiff's home as one of many that had been burglarized.
After hearing the evidence, the court finds for the plaintiff in the amount of $13,267.10 plus costs. The court finds that the purchase of the 1989 GMC truck by the plaintiff for $14,567.10 was a loan to the defendant for which she is entitled to payment (Exhibits B and C). From this figure of $14,567.10, the court credits the defendant with $1,300.00, which represents payments he made to the plaintiff on said loans as per the plaintiff's testimony. As to the remaining claims of loans made, the court finds that the plaintiff has not sustained her burden of proof.
As to the defendant's counterclaim the court finds the issues for the plaintiff, as the defendant did not sustain his burden of proof on these claims.
Judgment may enter accordingly.
WILLIAM J. SULLIVAN, J. CT Page 11156